THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| E.W., by and through her next friend, Kendra Watts; J.A., by and through her next friend, Linda Alford; C.M., by and through his next friend, Lena Clark; on behalf of themselves and all persons similarly situated; DISABILITY RIGHTS MISSISSIPPI,<br><br>Plaintiffs,<br><br>v.<br><br>LAUDERDALE COUNTY, MISSISSIPPI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No. 4:09 CV 137 TSL-LRA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AGREED ORDER

On October 19, 2009, Disability Rights Mississippi ("DRMS") filed a lawsuit against Lauderdale County seeking to enforce its access rights to the Lauderdale County Juvenile Detention Center ("LCJDC") pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§15001, et seq.; Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C., §§794e, et seq., as Mississippi's Protection and Advocacy System. Pursuant to an agreed order negotiated by the parties, DRMS launched an investigation of conditions inside the Lauderdale County Juvenile Detention Center and documented concerns regarding the policies and practices of the LCJDC. DRMS and Lauderdale County, without any admission on behalf of either, agree that it is in the best interests of all parties to resolve these concerns amicably without further litigation and cost to the taxpayers of Lauderdale County, Mississippi. Therefore, the parties by and

1

through their respective counsel, stipulate and agree to the following provisions. The term "Lauderdale County Juvenile Detention Center" hereinafter refers collectively to Lauderdale County, its Board of Supervisors, and all individuals who exert control over the operations of the Lauderdale County Juvenile Detention Center. The agreement and its specific requirements shall apply fully to the Lauderdale County Juvenile Detention Center and to any contractors that may provide services to the Lauderdale County Juvenile Detention Center in the future. The term "youth" hereinafter refers to children confined at the Lauderdale County Juvenile Detention Center. The parties understand that the requirements contained herein will be implemented without undue delay as soon as practicable. Unless otherwise indicated herein, the parties will collaborate to make all reasonable efforts to ensure that within 60 days of the effective date of this agreement, policies and procedures consistent with this agreement are drafted, in the process of being implemented and that all detention staff will receive training on the requirements of this agreement. The parties agree and understand that implementation will be an ongoing process that extends beyond the initial 60 days of the agreement.

The parties agree that the implementation and interpretation of this Settlement Agreement shall be guided by the fact that the primary purposes of Mississippi's juvenile system are "rehabilitation and individual treatment rather than retribution." *Buck v. State*, 838 So.2d 256, 260 (Miss. 2003) (internal quotations and citation omitted). The same principle that guides the interpretation of Mississippi's Youth Court Act shall guide the implementation of this Settlement Agreement. Both the Act and the Settlement Agreement shall:

> be liberally construed to the end that each child coming within the jurisdiction of the youth court shall become a responsible, accountable and productive citizen, and that each such child shall receive such care, guidance and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest. It is the public policy of this state that the parents of each child shall be primarily

2

>responsible for the care, support, education and welfare of such children; however, when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.

Miss. Code Ann. § 43-21-103. "Inherent in this policy is the protection and care of children in trouble and the rehabilitation of those gone astray." *Helmert v. Biffany*, 842 So.2d 1287, 1291 (Miss. 2003).

## I. INTAKE

1.1   All youth admitted to the Lauderdale County Juvenile Detention Center shall receive a health screening, if possible, within 1 hour of admission, as required by Miss. Code Ann. § 43-21-321. "Information obtained during the screening shall include, but shall not be limited to, the juvenile's: (a) Mental health; (b) Suicide risk; (c) Alcohol and other drug use and abuse; (d) Physical health; (e) Aggressive behavior; (f) Family relations; (g) Peer relations; (h) Social skills; (i) Educational status; and (j) Vocational status." Miss. Code Ann. § 43-21-321(1). During this screening, the Lauderdale County Juvenile Detention Center shall obtain information regarding the youth's educational status by having the youth or intake officer complete an education screening form developed and provided by the Meridian Public School District.

1.2   All youth shall receive a MAYSI-2 mental health screening immediately upon admission, as required by Miss. Code Ann. § 43-21-321. If the screening indicates that the youth has urgent medical and/or mental health issues including, but not limited to, major depression, suicidal ideation, withdrawal from drugs or alcohol, or trauma, the youth shall be immediately evaluated by a mental health professional or taken to the local emergency room.

1.3   Prescription medications will be secured for all youth who have a valid, current prescription within 8 hours of admission if possible, but not longer than within 24 hours of admission, including weekends and holidays. If during a youth's detention, a medical

3

professional either prescribes a new medication or renews a youth's previous prescription medication, the Lauderdale County Juvenile Detention Center will secure the prescription medication within 8 hours of receiving the prescription if possible, but not longer than within 24 hours including weekends and holidays. The Lauderdale County Juvenile Detention Center shall purchase all prescription medications prescribed to confined youth only for the time during which they are confined.

1.4     Youth Court staff shall first consider alternative sanctions to secure detention for youth who violate a court order by committing a non-delinquent act, prior to placing these youth in secure detention. Non-delinquency violations include, but are not limited to, school suspensions, curfew violations, and failure to report. Lauderdale County will work to develop a verified detention risk assessment instrument in collaboration with the Plaintiffs and with input from independent juvenile justice experts, to assist Youth Court staff in evaluating alternatives to secure detention.

1.5     The Defendant agrees to collaborate with the Plaintiffs to develop strategies that will reduce Lauderdale County's use of secure detention. The Defendant will seek to become a part of the Annie E. Casey Foundation's Juvenile Detention Alternatives Initiative in the state of Mississippi. The Defendant further commits to launching a collaborative process that will engage parents, youth, the faith-based community, law enforcement, mental health service providers, and public school stakeholders in an effort to evaluate Lauderdale County's juvenile justice system and identify improvements needed to better serve court-involved youth, save taxpayer dollars and reduce the unnecessary use of secure detention.

## II. CELL CONFINEMENT

2.1     The Lauderdale County Juvenile Detention Center shall ensure that there are sufficient numbers of adequately trained direct care and supervisory staff to supervise youth safely, protect youth from harm, allow youth reasonable access to medical and mental health services, and allow youth adequate time spent in out-of-cell activities.  Within 90 days of the date of the agreement, the Lauderdale County Juvenile Detention Center shall operate with direct care staff to youth ratio of 1:8 from the hours of 6:00 am until 10:00 pm and 1:10 from the hours of 10:00 pm to 6:00 am.  Direct care staff shall be stationed on the living units, engaged in the active supervision of youth.

2.2     If the staff-to-youth ratio falls below the requirements of § 2.1 for longer than two (2) days, the Director or his assignee shall immediately identify youth accused of nonviolent offenses who are eligible for less restrictive alternatives to secure detention and request from the Youth Court an emergency release for eligible youth.

2.3     Youth shall be permitted to engage in structured, rehabilitative and educational programming outside of their cells each day from 7:00 am until 30 minutes prior to the time at which youth are expected to be asleep at night, including weekends and holidays.  Staff shall grant any youth's request to spend time in his or her cells each day from 7:00 am until 30 minutes prior to the time at which youth are expected to be asleep at night, except when school is in session.  Unless youth receive a medical excuse, all youth are expected to participate in programs.

## III.     STRUCTURED PROGRAMMING

3.1     The Lauderdale County Juvenile Detention Center will establish and administer a daily program (including weekends and holidays) to provide structured educational, rehabilitative

and/or recreational programs for youth during all hours that youth shall be permitted out of their cells, which are specified in § 2.3. Programming shall include:

    a. Activities which are varied and appropriate to the ages of youth;

    b. Structured or supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship; and

    c. Supervised small group leisure activities, such a wide variety of card and table games, arts and crafts, or book club discussions.

## IV. MENTAL HEALTH CARE

4.1    The Lauderdale County Juvenile Detention Center shall provide adequate mental health services to all confined youth with a mental health diagnosis or a serious mental health need, as indicated by the MAYSI-2. For such youth, this shall include, but is not limited to, the provision of individual and group counseling sessions upon the request of a youth or the youth's parent/guardian, access to a mental health professional at the detention center, and the distribution and medical monitoring of psychotropic medications by a medical professional.

4.2    Youth, who are confined for longer than thirty (30) continuous days and who are prescribed psychotropic medications, shall be evaluated by a psychiatrist every thirty (30) days.

4.3    The provider of medical services shall coordinate individual mental health treatment services for all youth who are under the care of a mental health provider or who, based on previous mental health history and/or MAYSI-2 results, have a need for mental health treatment. Treatment services shall emphasize continuity of care and shall ensure that whenever possible, youth are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the youth's initial detention.

## V. MEDICAL CARE

5.1     The Lauderdale County Juvenile Detention Center shall provide youth with adequate medical care, including: prompt screenings; a full physical exam within 72 hours after their detention hearing or disposition order, as applicable; access to medical professionals and/or prescription medications when needed; and prompt transportation to a local hospital in the case of a medical emergency.

5.2     The Lauderdale County Juvenile Detention Center shall ensure that a medical doctor and/or nurse practitioner is available to examine youth confined at the facility to identify and treat medical needs.

5.3     The Lauderdale County Juvenile Detention Center shall develop a sick call policy and practice which ensures that confined youth who request non-emergency medical attention are examined by a medical professional within 24 hours, excepting weekends and holidays. All confined youth who request non-emergency medical care on holidays and weekends shall be examined by a medical professional within 72 hours.

5.4     Prescription medications shall only be distributed by licensed medical staff or staff who have received appropriate training from a medical professional. When non-medical staff distribute prescription medications, the medications shall be pre-packaged for distribution by a medical professional.

5.5     Medical and mental health services shall be provided in a manner that ensures the confidentiality of youth's health information.

## VI. DISCIPLINARY PRACTICES AND PROCEDURES

6.1     The Lauderdale County Juvenile Detention Center shall develop a discipline policy and practice that incorporates positive behavior intervention and supports. This policy shall include

guidelines for imposing graduated sanctions for rule violations, and positive incentives for good behavior.

6.2     Youth who violate major rules may be subject to room or cell confinement for up to 48 hours for a single rule violation. An occasion in which a youth is alleged to have contemporaneously violated multiple major rules shall count as a single rule violation for the purposes of this subsection. No youth shall be confined to a room for longer than 24 hours for a single rule violation without written notification of the alleged rule violation to the accused youth and a disciplinary review before an impartial staff member, which includes participation by the accused youth.  Under no circumstances shall youth be subject to involuntary cell confinement for longer than 48 hours for disciplinary purposes.  Youth who are placed on cell confinement shall be released from their cells daily to attend school (subject to compliance with school disciplinary rules), maintain appropriate personal hygiene and to engage in one hour of large muscle exercise.  Staff must perform visual checks on youth who are subject to cell confinement every 30 minutes and record these checks in a log book.

## VII. USE OF RESTRAINTS

7.1     Individual staff members shall not regularly carry chemical restraints while on the living units. Within 120 days of the effective date of this agreement, the Lauderdale County Juvenile Detention Center shall keep chemical restraints in a locked and secured location. The Lauderdale County Juvenile Detention Center shall develop a policy and procedure that requires staff to log the date, time and justification for 1) each time a chemical restraint is removed from the locked, secure location, and 2) each time a chemical restraint is applied to a youth.

7.2     Mechanical and/or chemical restraints shall not be used to punish youth or for the convenience of staff.

7.3    Nothing in Section VII shall prohibit mechanical restraints from being placed on youth who are in non-secure areas, including during transportation or while awaiting court, if staff have reason to believe that a youth presents a flight risk or will engage in violent behavior. If restraints are determined to be necessary on either of these grounds, a youth who is awaiting court may be secured to a security bench for a short period of time, not to exceed 20 minutes.

7.4    Restraints shall not be used to secure youth to a fixed object, such as a restraint chair, a bed or a post, except as determined to be necessary under § 7.3, and except as provided in § 7.7.

7.5    The Lauderdale County Juvenile Detention Center does not currently and shall not begin to subject youth to "hogtying," which is the practice of placing a youth face down on a bed, floor or other surface, and securing the youth's hands to his feet.

7.6    The Lauderdale County Juvenile Detention Center shall develop a policy and procedure to ensure that mechanical and/or chemical restraints are only used when a resident presents a threat of serious bodily injury to himself or others, except that mechanical restraints may be used as specified in § 7.3.

7.7    No youth shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional or if determined to be necessary under § 7.3. If a youth must be restrained for longer than 15 minutes in order to prevent self-harm, that youth shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility. The Lauderdale County Juvenile Detention may only secure a youth to a restraint chair if necessary to prevent immediate self-harm while awaiting transportation for medical treatment. Within 180 days of the effective date of this agreement, the Lauderdale County Juvenile Detention Center shall cease the use of the restraint chair and shall remove the restraint chair from the premises.

7.8     When a child is placed in mechanical restraints, staff must provide one-on-one supervision for the duration of the restraint, except when mechanical restraints are deemed to be necessary under § 7.3.  When mechanical restraints are determined to be necessary under § 7.3, staff shall conduct visual checks on the child every 15 minutes.

7.9     Lauderdale County Juvenile Detention Center shall notify a medical professional whenever a resident is restrained for reasons other than those specified in § 7.3 or whenever chemical restraints are applied to a youth.  A medical professional shall examine a youth as soon as possible after restraints are removed, except when a youth was restrained for the reasons specified in § 7.3.

## VIII. USE OF FORCE

8.1     Physical force shall not be used to punish youth. Staff shall only use physical force to stop youth from causing serious physical injury to self or others or to prevent an escape.  If physical force is necessary, staff must use the minimum amount required to safely contain the youth.  Whenever possible, staff shall avoid the use of force by first attempting verbal de-escalation techniques.

8.2     Lauderdale County Juvenile Detention Center shall notify a medical professional whenever physical force is used against a resident. A medical professional shall examine a youth as soon as possible after the use of physical force.

## IX. SUICIDE PREVENTION

9.1     Lauderdale County Juvenile Detention Center shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch. Suicide watch shall not be used as punishment. Whenever possible, the "suicide cell" shall be reserved for youth for whom the "suicide cell" is deemed necessary in conjunction with this suicide prevention policy.

9.2    Any resident placed on the highest level of suicide watch shall be evaluated by a mental health professional, ideally within 12 hours but not longer than within 24 hours of his or her placement on suicide watch.  If a resident on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the resident shall be immediately transported to a local mental health facility or emergency room for evaluation and/or treatment.

9.3    Youth on suicide watch shall participate in recreation, school, and other structured activities.  Youth shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely supervise youth on suicide watch, to include logging activities every 15 minutes.

9.4    When a resident is placed on any level of suicide watch, a report shall be made within 24 hours to the youth court, as well as to the resident's guardian and his or her defense attorney.

## X.    HYGIENE AND SANITATION

10.1    Youth shall be provided with the means to maintain appropriate hygiene, including soap and shampoo for showers, which will occur at least once daily, soap for washing hands after each time the youth use the toilet, and tooth paste and a tooth brush for tooth brushing, which will occur at least twice daily.

10.2    Youth shall be provided with sleeping mats and blankets that are clean and odorless.

10.3    Under no circumstances shall youth be deprived of mats and blankets.

10.4    Youth shall be provided with a clean, sanitary environment.

10.5    Lauderdale County shall develop policies and practices to ensure that the Juvenile Detention Center complies with relevant law regarding fire safety, weather emergencies, sanitation practices, food safety and the elimination and management of environmental toxins.

## XI.     FAMILY SUPPORT AND INTERACTION

11.1     Visitation privileges shall not be restricted or withheld from youth unless the detention center supervisor determines that a visit will violate the security of the Juvenile Detention Center or will engender the safety of residents, visitors or staff.

11.2     The visitation schedule shall be regularly scheduled at least three times per week and shall encourage family visitation.  LCJDC shall permit the minor siblings of confined youth and confined youth's own children to participate in visitation, as long as the minors' parent or guardian is present during the visitation.

11.3     Adequate space shall be provided for attorney, family, and other visits.  Within 90 days of the effective date of this agreement, residents and their visitors shall be in the same room and be allowed full contact, unless the detention center supervisor determines that such a visit will violate the security of the LCJDC.  Appropriate degrees of privacy shall be provided for family and other visits. Attorney visits shall be both private and confidential.

11.4     Within 90 days of the effective date of this agreement, youth shall be afforded an opportunity to call parents, primary caretakers or legal guardians free of charge three times per week.  The hours youth may make calls shall encourage family contact.

11.5     Youth shall be afforded opportunities to call attorneys and Department of Human Services social workers free of charge.

11.6     Youth may receive phone calls from their attorneys.  At the discretion of the Director or his assignee, in emergency situations, youth may receive phone calls from parents, primary caretakers, or legal guardians.

## XII.  MISCELLANEOUS PROVISIONS

12.1   Male and female youth shall be provided with equal access to educational and rehabilitative services, medical care, and indoor and outdoor recreation.

12.2   All youth shall have the opportunity to engage in at least one hour of large muscle exercise a day.

12.3   Youth shall have access to an adequate grievance system that is accessible to all youth regardless of literacy levels, and that provides youth with the opportunity to appeal facility-level determinations.

12.4   All staff working at the Lauderdale County Juvenile Detention Center shall receive training on their obligation under state law to report child abuse and neglect.  The Lauderdale County Juvenile Detention Center shall develop policies and practices to ensure that all allegations of child abuse and/or neglect are reported and fully investigated.

## XIIV. STAFF TRAINING

13.1   Lauderdale County shall collaborate with the Plaintiffs to design and implement a comprehensive training for detention center staff that will facilitate compliance with this order.

## XIV.   ENFORCEMENT, MONITORING AND DISMISSAL

14.1   The Lauderdale County Juvenile Detention Center agrees that, for the purpose of monitoring compliance with this agreement, the Mississippi Youth Justice Project will have full access the juvenile detention center, its eligible residents and relevant records, including but not limited to videotapes, incident reports and investigations, grievances, staff logs, personnel records excluding staff health information protected under HIPAA (limited to training, commendations, and disciplinary records), populations logs, records, and other relevant documents and files maintained by the Lauderdale County Juvenile Detention Center. The

Mississippi Youth Justice Project agrees to obtain a valid release from the facility resident and his or her guardian before requesting that individual resident's medical, mental health, educational, or youth court records. The release that the Mississippi Youth Justice Project obtains will include a provision that releases and holds harmless the County for the release of the resident's records. However, releases shall not be required when the Mississippi Youth Justice Project requests facility records such as those enumerated in the first sentence of this paragraph, despite the fact that they may contain otherwise confidential information related to individual facility residents. The Lauderdale County Juvenile Detention Center will allow the Mississippi Youth Justice Project to conduct confidential visits: with any resident who requests a confidential visit, to determine whether that resident is developmentally disabled within the meaning of the DD Act, 42 U.S.C. §§15001, et seq., or has a mental illness within the meaning of the PAIMI Act, 42 U.S.C. §§10801, et seq., or is disabled with the meaning of the PAIR Act, 29 U.S.C. §§794e et seq., and is eligible for protection and advocacy services (collectively, "eligible residents");  with any eligible resident who requests to speak with the Mississippi Youth Justice Project; with any resident who alleges that he or she may have knowledge of alleged abuse or neglect of any eligible resident; and with any resident who has, or whose parent or guardian has, executed a retainer agreement with the Mississippi Youth Justice Project authorizing the Mississippi Youth Justice Project to represent the resident regarding any legal matter, including, but not limited to, youth court matters or conditions of confinement. The Mississippi Youth Justice Project will provide youth with instructions about how to request a confidential visit by announcing its presence in the facility during monitoring visits.  The Lauderdale County Juvenile Detention Center will also allow youth to request contact with the Mississippi Youth Justice Project regarding conditions of confinement by completing a form

requesting legal assistance on which the youth designates the Mississippi Youth Justice Project as the desired legal representative and provides contact information for a parent or guardian. Where the youth completing this form is not eligible for protection and advocacy services and is not alleging that he or she has knowledge of alleged abuse or neglect of any eligible resident, and the interview is not being conducted to determine whether that resident is eligible for protection and advocacy services, the Mississippi Youth Justice Project will obtain written consent from the youth's parent or guardian prior to conducting a confidential visit with that youth. The Mississippi Youth Justice Project agrees to indemnify the County for any liability it incurs as a result of Mississippi Youth Justice Project's actions or inactions related to the monitoring of this agreement. The Mississippi Youth Justice Project further agrees to comply with all state and federal confidentiality requirements regarding youth court, educational and/or medical records.

14.2     The Parties will jointly develop a notice that will be provided to each youth confined at the Lauderdale County Juvenile Detention Center and his or her guardian. The Notice will provide the following information: 1) a statement of confined youth's rights pursuant to this agreement; 2) a description of Plaintiffs' ongoing monitoring activities, including a statement that Plaintiffs' counsel may conduct confidential interviews with youth under the guidelines set forth in § 14.1; and 3) information about how youth may decline to participate in the monitoring and enforcement of this agreement.

14.3     LCJDC and its personnel will ensure that no youth suffers retaliation or adverse treatment as a result of exercising his or her right to meet with DRMS or the Mississippi Youth Justice Project or participate in a DRMS or Mississippi Youth Justice Project investigation.

14.4     The Parties agree to collaborate on the development of a Juvenile Justice Community Advisory Board (JJCAB). The Board shall be comprised of at least 5 members of the Lauderdale

County Community appointed by the Senior Youth Court Judge, who will give full and fair consideration to recommendations made by Plaintiffs' counsel. The JJCAB shall regularly seek input from youth currently or formerly confined inside LCJDC and their parents. Four times a year, the JJCAB shall inspect the LCJDC and provide the Defendant with recommendations for the operation of the facility. The JJCAB shall be allowed to meet with confined youth and LCJDC staff and examine all policies and procedures, including but not limited to budgetary information. The JJCAB will be charged with assisting the Defendant secure additional resources for the Lauderdale County Juvenile Justice System, including, but not limited to resources to support alternatives to secure detention, volunteer programming inside the detention center, and recreational and educational supplies for the LCJDC. The Parties agree to develop training for JJCAB members on the juvenile justice system, the confidentiality requirements of the youth court and other relevant legal matters.

14.5    For a period of three years from the date of this agreement, the Mississippi Youth Justice Project will submit quarterly reports to the Lauderdale County Board of Supervisors and the Lauderdale County Youth Court regarding the juvenile detention center's compliance with the terms of this agreement.

14.6    All of the Plaintiffs' attorneys' fees, expenses and costs incurred in connection with this agreement will be borne by the Mississippi Youth Justice Project, except that if the Mississippi Youth Justice Project is forced to return to court to enforce this agreement, the Mississippi Youth Justice Project may make a claim for reimbursement of the attorneys' fees resulting from that enforcement action.

14.7    This Settlement Agreement is not a consent decree, and is not enforceable in federal court. In the event of non-compliance with any of the terms in this Settlement Agreement, the

Plaintiffs may only enforce the Settlement Agreement in state court, pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(c)(2), which provides: "(A) Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection(a), if the terms of that agreement are not subject to court enforcement other than the reinforcement of the civil proceeding that the agreement settled. (B) Nothing in this section shall preclude any party claiming that a private settlement agreement has been breached from seeking in State court any remedy available under State law."

14.8    The Plaintiffs are not precluded from bringing a new action in federal court in the event of non-compliance with the terms of this Settlement Agreement; however, this Settlement Agreement or the terms hereof cannot be used in court as an admission of any party hereto.

14.9    This Settlement Agreement shall not preclude any child who is currently confined at the Lauderdale County Juvenile Detention Center or who will be confined in the future from pursuing a claim related to his or her detention in either state or federal court. Nothing in this Settlement Agreement shall prohibit any child or his or her parent or guardian from hiring their own attorney to represent them regarding conditions of confinement or any other matter.

14.10   If the Court before whom the current lawsuit is pending approves this Settlement Agreement, the current case will be dismissed in its entirety without prejudice from federal court.

AGREED:                    AGREED:                    AGREED:

_____            _____            _____
Sheila A. Bedi             Lee Thaggard               Honorable Frank Coleman
Poonam Juneja              Counsel for Defendant      Senior Youth Court Judge
Vanessa Carroll                                       Lauderdale County Youth Court
Robert B. McDuff
Kimalon Melton
Counsel for Plaintiffs